Bryan J. Vogel (*pro hac vice*)
BVogel@RobinsKaplan.com
Derrick J. Carman (*pro hac vice*)
DCarman@RobinsKaplan.com
Travis K. Waller (*pro hac vice*)
TWaller@RobinsKaplan.com
Nishi A. Tavernier (*pro hac vice*)
NTavernier@RobinsKaplan.com
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Tel.: (212) 980-7400
Fax: (212) 980-7499

Li Zhu (Bar No. 302210)
LZhu@RobinsKaplan.com
**ROBINS KAPLAN LLP**
555 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065
Tel.: (650) 784-4040
Fax: (650) 784-4041

*Attorneys for Plaintiff Railware, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| RAILWARE, INC., | Case No. 5:25-cv-05725-BLF |
| *Plaintiff*, | **RAILWARE'S OPPOSITION TO CALTRAIN'S MOTION TO DISMISS** |
| v. | |
| PENINSULA CORRIDOR JOINT POWERS BOARD D/B/A CALTRAIN, | Judge: Hon. Beth Labson Freeman<br>Date: February 19, 2026<br>Location: Courtroom 1 – 5th Floor |
| *Defendant*. | |

**ROBINS KAPLAN LLP**
ATTORNEYS AT LAW
SILICON VALLEY

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................1
II.   LEGAL STANDARD .........................................................2
III.  STATEMENT OF ISSUES.................................................2
IV.   STATEMENT OF FACTS..................................................3
V.    ARGUMENT.....................................................................3
      A.  Railware's Complaint Sufficiently Pleads Direct Infringement. ...................3
          1.  Railware's Complaint gives Caltrain "fair notice" of its infringement of the Asserted Patents. .................................4
          2.  Railware sufficiently identifies the accused systems and methods. ..................................................................4
          3.  Railware need not prove the secret aspects of Caltrain's accused systems and methods that are not ascertainable without discovery.........................................................6
      B.  Railware's Complaint Sufficiently Pleads Willful Infringement..................8
      C.  Railware's Complaint Sufficiently Pleads Induced Infringement................10
      D.  Caltrain Fails to Establish that the Claims of the '115 Patent Are Invalid under 35 U.S.C. § 101 as Directed to Patent-Ineligible Subject Matter. ................................................12
          1.  The Claims of the '115 Patent were already recently found in *Railware v. Amtrak* to be directed to patent-eligible subject matter. ......................................12
          2.  Caltrain's arguments are the same as those rejected by the court in *Railware v. Amtrak*.................................13
              a.  Caltrain's arguments are predicated on the same grounds as those raised in *Railware v. Amtrak*. ...................13
              b.  Caltrain's alleged "new" cases are duplicative of those considered in *Railware v. Amtrak* and are otherwise irrelevant and inapposite. ....................13
              a.  This Court should accord the decision in *Railware v. Amtrak* "substantial weight" and "reasoned deference." ...............................................17
          3.  Caltrain fails to establish that the claims of the '115 Patent are directed to patent-ineligible subject matter................18
              a.  *Alice* Step One: the claims of the '115 Patent are not directed to an abstract idea...........................18
                  i.   Caltrain improperly overgeneralizes the claims of the '115 Patent. ...............................18
                  ii.  The claims of the '115 Patent recite specific technical solutions to the specific technical problem of errant, improper, and/or premature block removal...................19
                  iii. The claims of the '115 Patent are similar to claims the Federal Circuit has held patent-eligible............................21
              b.  *Alice* Step Two: the claims of the '115 Patent recite significantly more than an abstract idea.....................23

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

4.    Caltrain's arguments regarding the dependent claims are irreconcilable with its arguments for overruling *Railware v. Amtrak*..................................................................25

VI.    ALTERNATIVELY, RAILWARE REQUESTS TO AMEND.............................25

VII.    CONCLUSION...........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ................................................................. 1, 6, 10, 11

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ........................................................................12, 15, 18, 23

*Ancora Techs., Inc. v. HTC Am., Inc.*,
908 F.3d 1343 (Fed. Cir. 2018) ...................................................................... 22

*Ancora Techs., Inc. v. Roku, Inc.*,
140 F.4th 1351 (Fed. Cir. 2025) ........................................................... 18, 22, 23

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .................................................................. 17, 23

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ........................................................................ 25

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ...................................................................... 2, 6

*Capella Photonics, Inc. v. Ciena Corp.*,
546 F. Supp. 3d 977 (N.D. Cal. 2021) .............................................................. 17

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) ...................................................................... 19

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*,
No. 19-CV-05784-JST, 2020 WL 7392909 (N.D. Cal. July 23, 2020) .................................. 5

*Contour IP Holding LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024) ...................................................................... 21

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) .............................................................. 23, 24, 25

*Core Optical Techs., LLC v. Juniper Networks Inc.*,
562 F. Supp. 3d 376 (N.D. Cal. 2021)382 ................................................. *passim*

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ...................................................................... 23

*Corephotonics, Ltd. v. Apple*,
2018 WL 4772340 (N.D. Cal. 2018) ................................................................... 9

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
   15 F.4th 1091 (Fed. Cir. 2021) .................................................................................... 18

*CTD Networks, LLC v. Google, LLC*,
   688 F. Supp. 3d 490 (W.D. Tex. 2023) .......................................................................... 6

*CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*,
   721 F. Supp. 3d 1050 (N.D. Cal. 2024) ......................................................................... 8

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
   No. 22-CV-00561-JSW, 2022 WL 1556417 (N.D. Cal. May 17, 2022) ............................. 8

*David v. Kaulukukui*,
   38 F.4th 792 (9th Cir. 2022) ........................................................................................ 7

*directPacket Research, Inc. v. Polycom, Inc.*,
   No. 2024-1147, 2025 WL 1752247 (Fed. Cir. 2025) ..................................................... 14

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018) .............................................................................. 2, 4

*Dolby Labs., Inc. v. Intertrust Techs. Corp.*,
   No. 19-cv-03371-EMC, 2021 WL 369542 (N.D. Cal. Feb. 3, 2021) ................................ 17

*EcoServices, LLC v. Certified Aviation Serv., LLC*,
   830 Fed. Appx. 634 (Fed. Cir. 2020) .......................................................................... 21

*Entangled Media, LLC v. Dropbox Inc.*,
   748 F. Supp. 3d 776 (N.D. Cal. 2024) ......................................................................... 10

*Eye Therapies, LLC v. Slayback Pharma, LLC*,
   141 F.4th 1264 (Fed. Cir. 2025) ................................................................................ 21

*Finjan, Inc. v. Blue Coat Sys.*,
   879 F.3d 1299 (Fed. Cir. 2018) ................................................................................. 23

*Finjan, Inc. v. Cisco Sys. Inc.*,
   No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ......................... 9, 10

*Finjan, Inc. v. SonicWall, Inc.*,
   No. 17-CV-04467-BLF, 2018 WL 2234370 (N.D. Cal. May 16, 2018) ......................... 2, 8

*First, ScanComm LLC v. Block, Inc.*,
   775 F. Supp.3d 1263 (N.D. Ga. Mar. 21, 2025) .................................................. *passim*

*Firstface Co. v. Apple, Inc.*,
   No. 18-CV-02245-JD, 2019 WL 1102374 (N.D. Cal. Mar. 8, 2019) ................................. 8

*Fortinet, Inc. v. Forescout Techs., Inc.*,
   543 F. Supp. 3d 814 (N.D. Cal. 2021) ......................................................................... 18

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

*Garrett v. TP-Link Rsch. Am. Corp.*,
   No. 20-CV-03491-SI, 2020 WL 6873419 (N.D. Cal. Nov. 23, 2020) ................................ 10

*Gerber v. Twitter, Inc.*,
   No. 4:23-CV-00186-KAW, 2024 WL 5173313 (N.D. Cal. Dec. 18, 2024),
   *motion to certify appeal denied*, No. 4:23-CV-00186-KAW, 2025 WL
   1359217 (N.D. Cal. May 9, 2025) ....................................................................... 7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ............................................................................................. 9

*Hypermedia Navigation LLC v. Google LLC*,
   No. 18-cv-6137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019) ................................ 11

*In re Animation Workers Antitrust Litig.*,
   123 F. Supp. 3d 1175 (N.D. Cal. 2015) ................................................................. 7

*Inari Medical Inc. v. Inquis Medical, Inc.*,
   2025 WL 2912857 (D. Del. Oct. 14, 2025) ......................................................... 8, 9

*K-Tech Telecomms, Inc. v. Time Warner Cable, Inc.*,
   714 F.3d 1277 (Fed. Cir. 2013) ..................................................................... 1, 6, 7

*Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*,
   677 F. Supp. 3d 1079 (N.D. Cal. 2023) ................................................................. 6

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019) ......................................................................... 23

*Laatz v. Zazzle, Inc.*,
   682 F. Supp. 3d 791 (N.D. Cal. 2023) ................................................................. 2

*Littelfuse, Inc. v. Mersen USA EP Corp.*,
   29 F.4th 1376 (Fed. Cir. 2022) ......................................................................... 21

*McRO, Inc. v. Namco Bandai Games Am., Inc.*,
   23 F. Supp. 3d 1113 (C.D. Cal. 2013) ................................................................. 7

*MyMail, Ltd. v. ooVoo, LLC*,
   934 F.3d 1373 (Fed. Cir. 2019) ......................................................................... 16

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018) ................................................................... *passim*

*Nat'l Instruments Corp. v. MathWorks, Inc.*,
   113 F. App'x 895 (Fed. Cir. 2004) ..................................................................... 10

*P2i Ltd. v. Favored Tech USA Corp.*,
   No. 23-CV-01690-AMO, 2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) .............. 10, 11, 12

*Railware, Inc. v. Nat'l Railroad Passenger Corp. d/b/a Amtrak*,
No. 22 Civ. 5013 (KPF), 2023 WL 5432860 (S.D.N.Y. Aug. 23, 2023) ......................*passim*

*RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*,
743 F. Supp. 3d 911 (W.D. Tex. 2024).................................................................17

*Second, All Terminal Servs., LLC v. Roboflow, Inc.*,
No. 25-476-WCB, 2025 WL 2576394 (D. Del. Sept. 5, 2025)....................................*passim*

*SmartWatch MobileConcepts, LLC v. Google LLC*,
No. 24-CV-00937-RFL, 2024 WL 2853966 (N.D. Cal. May 21, 2024) ...............................7

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
14 F.4th 1323 (Fed. Cir. 2021)..........................................................................*passim*

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019) .....................................................................19, 22

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017) ............................................................................23

*Tigo Energy Inc. v. SunSpec All.*,
679 F. Supp. 3d 947 (N.D. Cal. 2023) ...................................................................25

*Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*
874 F.3d 1329 (Fed. Cir. 2017) .............................................................................14

*UPF Innovations*, No. 19-VC-02711-VC, 2019 WL 4729601 (N.D. Cal. Sept. 17, 2019) ..........................................................................................................5, 9

*Valdez v. FCA US LLC*,
No. 24-CV-06591-JSC, 2025 WL 732241 (N.D. Cal. Mar. 7, 2025)...................................14

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017) ............................................................................18

*VLSI Tech. LLC v. Intel Corp.*,
706 F. Supp. 3d 953 (N.D. Cal. 2023) .....................................................................8

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*,
No. C-10-4458 EMC, 2011 WL 4079231 (N.D. Cal. Sept. 12, 2011) ..................................5

**Statutes**

35 U.S.C. § 101 ...........................................................................................1, 12, 18

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................2

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

## I.    INTRODUCTION

Caltrain's Motion to Dismiss (ECF 31) ("Motion" or "MTD") takes a scatter-shot approach to dismissal, seeking to dismiss Railware's direct infringement, willful infringement, and induced infringement claims, as well as attempting to invalidate just one of Railware's three asserted patents under 35 U.S.C. § 101. None of Caltrain's arguments have merit.

*First*, as to direct infringement, Railware's 94-page Complaint details allegations regarding Caltrain's accused systems and methods, including identifying Caltrain's "Rail Operations Control System" or "ROCS" in use at Caltrain's CEMOF in San Jose, California. These allegations satisfy the low pleading standard required to survive a motion to dismiss. Caltrain's assertions to the contrary and that it does not understand the accused systems and methods at issue, are not credible. Caltrain's arguments effectively require Railware to prove infringement at the pleadings stage. That is not what the law requires. *See AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024). The fact that Caltrain disagrees with Railware's allegations is not grounds to dismiss the Complaint. Rather, Caltrain's arguments raise issues that must be resolved through discovery. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Railware's Complaint need not prove the secret names, components or operations of Caltrain's accused systems and methods that are not ascertainable without discovery. *See K-Tech Telecomms, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013).

*Second*, willful infringement is not an issue that is appropriate for dismissal at the pleading stage. Railware is also not required to plead, or establish, "egregiousness" at this stage. Nevertheless, Railware sufficiently alleges that Caltrain had the requisite knowledge and acted "willfully and deliberately" and further provides allegations to establish a plausible claim that Caltrain's conduct was and continues to be "egregious."

*Third*, as to induced infringement, Railware pleads sufficient allegations regarding a direct infringer(s), knowledge, and specific intent. Railware alleges that "users and/or developers" and "dispatchers" (who may or may not be Caltrain employees or contractors) use Caltrain's accused systems and methods, which are acts of direct infringement. Further, it is "enough to assert that [Caltrain] … 'provid[ed] instructions, support, and technical assistance' to another in committing

infringement." *Core Optical Techs., LLC v. Juniper Networks Inc.*, 562 F. Supp. 3d 376, 382 (N.D. Cal. 2021)382 (citing *Nalco*, 883 F.3d at 1355). Railware's Complaint includes such allegations.

*Finally*, as to patent-eligibility, Caltrain repeats the same arguments that were already considered and rejected in *Railware, Inc. v. Nat'l Railroad Passenger Corp. d/b/a Amtrak*, No. 22 Civ. 5013 (KPF), 2023 WL 5432860 (S.D.N.Y. Aug. 23, 2023) ("*Amtrak*"). Caltrain's arguments have no more merit today than they did in 2023 when they were presented by Amtrak (and by the same counsel that is representing Caltrain here). This Court should accord "substantial weight" and "reasoned deference" to the court's (Judge Failla) decision in *Amtrak*. Even if the Court is inclined to consider this issue anew, the claims of the '115 patent are directed to patent-eligible subject matter. Caltrain's Motion should be denied.

## II.    LEGAL STANDARD

"To survive a Rule 12(b)(6) motion, [Railware] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Laatz v. Zazzle, Inc.*, 682 F. Supp. 3d 791, 802 (N.D. Cal. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to [Railware]." *Id.* at 802. Railware does not need to prove its infringement case at the pleading stage. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346 (Fed. Cir. 2021). All that is required at this stage is for Railware to plead a claim that is "plausible on its face." *Disc Disease Sols. Inc. v. VGH Sols.*, Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (internal quotations omitted); *see also Finjan, Inc. v. SonicWall, Inc.*, No. 17-CV-04467-BLF, 2018 WL 2234370, at *1 (N.D. Cal. May 16, 2018). To be "plausible," Railware's Complaint must be sufficiently detailed to give Caltrain "fair notice of infringement of the asserted patents." *Disc Disease Sols.,* 888 F.3d at 1260. "The plausibility standard 'does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support [Railware's allegations]." *Nalco*, 883 F.3d at 1350 (internal citations omitted).

## III.    STATEMENT OF ISSUES

1.    Whether Railware has adequately pleaded direct patent infringement.

2.      Whether Railware has adequately pleaded willful infringement.

3.      Whether Railware has adequately pleaded induced infringement.

4.      Whether the claims of the '115 patent are patent-eligible.

## IV.    STATEMENT OF FACTS

Railware filed a 94-page Complaint, accusing Caltrain of infringement of U.S. Pat. No. 9,517,782 and U.S. Reissue Pat. Nos. RE47,835 and RE49,115 (the "'115 patent") (collectively, the "Asserted Patents") by the implementation and use of its centralized train control ("CTC") systems, including Caltrain's "Rail Operations Control System" or "ROCS" in use at Caltrain's CEMOF, located at 585 Lenzen Avenue, San Jose, California. *See, e.g.*, Cmplt., ¶¶ 21-23, 58-59, 77, 96, 140-141, 162, 203-204, 230-231. ROCS is Caltrain's "internal nomenclature" for its CTC systems and includes the RailwayNet$^{SM}$ system with "Enhanced Employee Protection Systems" ("EEPS") and/or EEPS-like functionality and/or the Advanced Information Management ("AIM") system with EEPS and/or EEPS-like functionality or other same or similar systems or methods. *E.g., id.* The Asserted Patents cover safety technology in CTC systems that prevents errant, improper, and/or premature block removal on a specified segment(s) of track (that prevent trains from being routed into the blocked area). *E.g., id.* Railware's Complaint sets forth detailed allegations explaining, with screenshots and citations to publicly available documents, *inter alia*, these systems and methods accused of infringement, as well as where each element of at least one claim of each of the Asserted Patents may be found in Caltrain's accused systems and methods. *See generally*, Cmplt.

More, Railware's Complaint alleges that Caltrain knew of the Asserted Patents and that it has infringed and continues to infringe "willful[ly] and deliberate[ly]." *E.g.*, Cmplt ¶¶ 1, 128, 192, 286. In support, Railware's Complaint sets forth detailed allegations. *E.g., id.* ¶¶ 1, 49-57, 122-128, 186-192, 280-286. For example, Railware's Complaint alleges that, on or about May 15, 2025, Railware sent a notice letter to Caltrain informing it of its infringement of the Asserted Patents. *E.g., id.* ¶¶ 49-51, 122, 127, 128, 186, 191, 192, 280, 285, 286.

## V.    ARGUMENT

### A.    Railware's Complaint Sufficiently Pleads Direct Infringement.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

Railware's Complaint gives Caltrain "fair notice" of its infringement of the Asserted Patents. Caltrain's assertions to the contrary are without merit.

### 1. Railware's Complaint gives Caltrain "fair notice" of its infringement of the Asserted Patents.

Railware's Complaint pleads direct infringement of exemplary Caltrain systems and methods known as Caltrain's ROCS, and that ROCS is Caltrain's "internal nomenclature" for its CTC systems with EEPS. *E.g.*, Cmplt., ¶¶ 21-23, 58-59, 77, 96, 140-141, 162, 203-204, 230-231. Railware's Complaint discusses the accused systems and methods in detail, complete with screenshots and citations to publicly available documents. *E.g.*, *id.; see also*, *e.g.*, ¶¶ 69-118, 132-182, 196-276. For example, Railware's Complaint alleges that Caltrain's ROCS includes the "RailwayNet^SM system with EEPS and/or EEPS-like functionality and/or the AIM system with EEPS and/or EEPS-like functionality or other same or similar systems or methods." *E.g.*, *Id.* ¶ 59. Railware's Complaint further alleges that "CEMOF 'is the 'nerve center,' of the commuter railroad, where dispatchers direct and monitor train traffic between San Francisco and Gilroy.' This control center 'controls all train movement on the corridor.'" *Id.* ¶ 58 (citations omitted), *see also id.* ¶¶ 95, 142, 205, 232. It is through these "control centers" that Caltrain uses its infringing systems and methods, including ROCS. *E.g.*, *id.* ¶¶ 58-59, 77, 95-96, 140-142, 152, 162, 203-205, 215, 222, 230- 232, 253. Railware's Complaint also includes as support numerous screenshots and citations to publicly available documents on a patent-by-patent basis. *E.g.*, Cmplt ¶¶ 69-118 ('782 patent), 132-182 ('835 patent), 196-276 ('115 patent). For example, Railware's Complaint relies on a Caltrain presentation where Caltrain states: "The central train control system is known as the Rail Operations Control System (ROCS). ROCS is based upon the proprietary software platform Advanced Information Management System (AIM), provided by ARINC." *Id.* ¶ 59, n. 37. Still further, Railware also alleges the importance of EEPS within those accused systems and methods, *e.g., id.* ¶¶ 68, 76, 115, 137, 156, 242, 265, and relies on a Caltrain presentation where Caltrain expressly references "Enhanced Employee Protection Systems" being implemented within Caltrain's ROCS, *id.* ¶ 68, n. 43. These allegations are sufficient to give Caltrain "fair notice" of its infringement. *Nalco*, 883 F.3d at 1350; *Disc Disease Sols.*, 888 F.3d at 1260.

### 2. Railware sufficiently identifies the accused systems and methods.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

Caltrain's arguments that Railware "never shows which specific product allegedly infringes," and that Railware identified an "expansive list of product types," MTD at 4, are incorrect for several reasons. *First*, as explained above, Railware identifies and explains in detail exemplary accused systems and methods, including Caltrain's ROCS. *Second*, as explained above, Railware provides numerous screenshots and citations to public documents explaining the components and operations of these accused systems and methods. For example, Railware explains that Caltrain's ROCS includes the RailwayNet^{SM} system with EEPS and/or the AIM system with EEPS. *Third*, Railware provides element-by-element analyses of Caltrain's accused systems and methods for an exemplary claim in each of the Asserted Patents. *E.g.*, Cmplt ¶¶ 69-118 ('782 patent), 132-182 ('835 patent), 196-276 ('115 patent). This is sufficient to give Caltrain "fair notice" of the accused systems and methods. *See, e.g., UPF Innovations,* No. 19-CV-02711-VC, 2019 WL 4729601, at *1 (N.D. Cal. Sept. 17, 2019).

Caltrain's reliance on *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2020 WL 7392909 (N.D. Cal. July 23, 2020), is misplaced. In *Celgard,* the court found that the identified "lists of [categories of accused] products are non-specific and fail to identify any single product by name or number." *Celgard*, No. 19-CV-05784-JST, 2020 WL 7392909, at *3. Further, in *Celgard*, there were hundreds of accused products at issue. *See, e.g.,* Sixth Am. Cmplt., *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, ¶¶ 142, 152 (and exhibits thereto). In contrast, here, there are likely a handful of accused systems and methods at issue, and Railware specifically identifies particular exemplary accused systems and methods by name.

Caltrain's reliance on *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458 EMC, 2011 WL 4079231 (N.D. Cal. Sept. 12, 2011), is similarly flawed. In *Wistron*, the court found that a patent owner's identification of generic "computer chips, motherboards, computers, and other products" was insufficient to provide one accused infringer (Wistron) with fair notice, but the court denied the motion with respect to a different accused infringer (AOpen) because the patent owner identified a specific product. *Wistron*, C-10-4458 EMC, 2011 WL 4079231 at *4, *7. Like the allegations against AOpen, Railware identifies specific, exemplary accused systems

and methods by name. *E.g.*, Cmplt., ¶ 59. *Wistron* supports Railware, not Caltrain.

Similarly, Caltrain's reliance on *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490 (W.D. Tex. 2023), is misplaced. In *CTD*, "Plaintiff's SAC still fails to identify a single product that satisfies every limitation of each allegedly infringed patent claim." *CTD*, 688 F. Supp. 3d at 500. Here, unlike in *CTD*, Railware identifies exemplary accused systems and methods by name, including Caltrain's ROCS, and provides element-by-element analyses of Caltrain's accused systems and methods for an exemplary claim in each of the Asserted Patents. *E.g.*, Cmplt., ¶ 59, Cmplt ¶¶ 69-118 ('782 patent), 132-182 ('835 patent), 196-276 ('115 patent).

Caltrain's assertion that references to "same or similar systems or methods" or "EEPS-like functionality" renders the allegations "too expansive" is incorrect. Railware is "not required to identify all allegedly infringing products in [its] complaint and map those products to patent claims." *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 677 F. Supp. 3d 1079, 1084 (N.D. Cal. 2023) (collecting cases). Rather, Railware need only give Caltrain "fair notice" of the accused systems and methods and raise a reasonable expectation that discovery will reveal evidence to support its allegations. *Nalco*, 883 F.3d at 1350. Railware does so.

Further, the use of categorical allegations is particularly appropriate here because the precise internal nomenclature, components, and operations of Caltrain's accused systems and methods are secret and not publicly available. *K-Tech*, 714 F.3d at 1286. Caltrain's arguments raise issues that must be resolved through discovery—as, for example, through internal source code, user manuals, technical depositions, etc.—not at the pleading stage. *Id.*

### 3. Railware need not prove the secret aspects of Caltrain's accused systems and methods that are not ascertainable without discovery.

Caltrain's arguments that Railware has allegedly not specified precisely how Caltrain's "release code" is "not readily available to the dispatcher," MTD at 6-7, or how Caltrain's accused systems and methods go about generating that "release code," *id.*, are misplaced and incorrect. As an initial matter, Caltrain's arguments improperly seek to require Railware to prove its infringement claims at the pleading stage. That is not the law. *AlexSam*, 19 F.4th at 35; *Bot M8 LLC,* 4 F.4th at 1346. For example, Railware's Complaint need not prove the secret names, components, or operations of Caltrain's accused systems and methods that are not ascertainable

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

without discovery. *See McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1121 (C.D. Cal. 2013); *K-Tech Telecomms.,* 714 F.3d at 1286. Any "code" used in Caltrain's accused systems and methods is secret and not publicly available, as are the names, components, and operations for how that "code" is generated.

Nevertheless, Railware's Complaint sufficiently pleads direct infringement, including that Caltrain's accused systems and methods (*e.g.*, Caltrain's ROCS): (1) use a "code," (2) that the "code" is "unique," "secret," and "not readily available to the dispatcher," and (3) that there are components and/or operations in Caltrain's accused systems and methods that generate the "code." *See, e.g.*, Cmplt. ¶¶ 84, 107-110, 170, 266, 267. Caltrain admits as much. *See, e.g.*, MTD at 6 (*citing* Cmplt., ¶¶ 266-67).

Despite its concessions, Caltrain argues that Railware's Complaint is insufficient because the public documents that Railware cites do not support the allegations. *See, e.g.*, MTD at 6 (re: the code); *id.* at 7-8 (re: the code generation). Put simply, Caltrain disagrees with the factual support provided, but does not dispute the allegations themselves or that factual support exists. However, the fact that Caltrain disagrees with the allegations cannot serve as grounds to dismiss Railware's claims. *See, e.g., David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022) ("We 'accept[] as true all well-pleaded allegations of material fact, and construe[] them in the light most favorable to the non-moving party.'"); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1208 (N.D. Cal. 2015) ("characterizations or interpretations of certain factual allegations do not go to the sufficiency of Plaintiffs' allegations on a motion to dismiss."); *Gerber v. Twitter, Inc*., No. 4:23-CV-00186-KAW, 2024 WL 5173313, at *4 (N.D. Cal. Dec. 18, 2024), *motion to certify appeal denied*, No. 4:23-CV-00186-KAW, 2025 WL 1359217 (N.D. Cal. May 9, 2025) (challenges to well pleaded factual allegations on a motion to dismiss are inherently improper). Rather, it raises issues that must be resolved through discovery. *K-Tech*, 714 F.3d at 1286.

Caltrain's cited cases are inapposite and do not help Caltrain. All of Caltrain's cases fault the plaintiff for completely failing to analyze a required claim element of the asserted patent to support its infringement claims. *See SmartWatch MobileConcepts, LLC v. Google LLC*, No. 24-CV-00937-RFL, 2024 WL 2853966, at *1 (N.D. Cal. May 21, 2024) ("[T]he Complaint does not

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

identify how the accused Google Pixel Watch infringes by communicating with a 'secured electronic system.'"); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, 721 F. Supp. 3d 1050, 1055 (N.D. Cal. 2024) ("CyboEnergy fails to allege, for example, that Northern Electric provides DC power sources, connects DC power sources to DC input ports, or provides AC power to the power grid—all of which are required under Claim 19."); *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, No. 22-CV-00561-JSW, 2022 WL 1556417, at *3-4 (N.D. Cal. May 17, 2022) ("Cyph's argument fails to explain how the allegations show either (1) how Zoom rather than its customers practices each step of the claimed methods or (2) how Zoom's customer's actions can be attributed to Zoom under Akamai."). In contrast, as explained above, Railware's Complaint analyzes all of the required claim elements, showing precisely how Caltrain's accused systems and methods satisfy each claim element of the exemplary claim. *E.g.*, Cmplt ¶¶ 69-118 ('782 patent), 132-182 ('835 patent), 196-276 ('115 patent). Caltrain does not dispute this. MTD at 6-7.

Accordingly, Railware's Complaint sufficiently pleads direct infringement.

## B.    Railware's Complaint Sufficiently Pleads Willful Infringement.

Willful infringement is not an issue that is appropriate for early dismissal. *See Firstface Co. v. Apple, Inc.*, No. 18-CV-02245-JD, 2019 WL 1102374, at *2 (N.D. Cal. Mar. 8, 2019); *see also Inari Medical, Inc. v. Inquis Medical, Inc.*, No. CV 24-1023-CFC, 2025 WL 2912857, at *4 (D. Del. Oct. 14, 2025). Even if considered at the pleading stage, Railware need only plead "that [Caltrain] knew or should have known (1) of the patent, and (2) that it was infringing the patent." *VLSI Tech. LLC v. Intel Corp.*, 706 F. Supp. 3d 953, 991 (N.D. Cal. 2023). Stated differently, Railware must plead that Caltrain's infringement was "deliberate or intentional." *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021); *Core Optical*, 562 F. Supp. 3d at 381; *see also Amtrak*, 2023 WL 5432860, at *13. Allegations of willfulness should be viewed "as a whole." *See Finjan*, 2018 WL 2234370, at *3; *VLSI Tech. LLC*, 706 F. Supp. 3d at 991.

In contrast, "egregiousness," relates to the Court's discretion to award enhanced damages at a later stage of the case. Egregiousness does not need to be pleaded because "the ultimate question whether the alleged conduct is sufficiently egregious to warrant enhanced damages is for the Court to decide at summary judgment or after trial." *Core Optical.*, 562 F. Supp. 3d at 381;

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

*Inari*, 2025 WL 2912857, at \*4. But even if allegations regarding egregiousness were required (they are not), under Caltrain's cited law, Railware only needs to make "specific factual allegations about [Caltrain's] subjective intent, or any other aspects of [Caltrain's] behavior that would suggest its behavior was 'egregious.'" *See Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017 WL 2462423, at \*5 (N.D. Cal. June 7, 2017) (decision predating *SRI*). Railware's Complaint is sufficient to request enhanced damages due to Caltrain's willful and deliberate infringement.

*First*, Railware pleads that Caltrain received, and ignored, a letter informing Caltrain of its infringement of the Asserted Patents months before the Complaint was filed. *E.g.*, Cmplt. ¶¶ 49-51, 127, 191, 285. Despite this notice, Caltrain continued its infringement. *Id.* ¶¶ 22, 73, 118, 136, 182, 200, 276. These allegations evidence willful and deliberate conduct on the part of Caltrain, and suggest that Caltrain's behavior was egregious. *E.g., id.* ¶¶ 1, 128, 192, 286. This is sufficient. *UPF Innovations*, 2019 WL 4729601, \*1.

*Second*, Railware points to other evidence of Caltrain's willful, deliberate, and egregious infringement. For example, Railware's Complaint identifies communications related to the same accused systems and methods at issue here being discussed between Caltrain and another entity (SEPTA) in the tight-nit rail industry that Railware had sued for infringement of the Asserted Patents. Cmplt. ¶¶ 53, 57. Railware's Complaint also pleads that Caltrain operates tracks alongside Amtrak, whom Railware also sued for infringement. Cmplt. ¶¶ 55-56. This Court has found similar allegations, alone, as sufficient. *See, e.g., Core Optical*, 562 F. Supp. 3d at 381.

*Third*, Railware identifies a myriad of public notices which would notify Caltrain, as an industry participant acting reasonably, of the existence of the Asserted Patents and its infringement thereof. Cmplt. ¶¶ 52, 54, 56-57. These allegations are also sufficient. *See, e.g., Corephotonics, Ltd. v. Apple*, Inc., 2018 WL 4772340, \*8-\*10 (N.D. Cal. 2018); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011).

Caltrain's cases are inapposite. In *Finjan v. Cisco Sys. Inc.*, the court dismissed plaintiff's willfulness claims for not tying the factual allegations of willfulness to any particular asserted patent. No. 17-CV-00072-BLF, 2017 WL 2462423, at \*5 (N.D. Cal. June 7, 2017). Here, Railware's Complaint ties the allegations of Caltrain's willfulness to each of the Asserted Patents.

*E.g.*, Cmplt. ¶¶ 49-57, 122-128, 186-192, 280-286. Further, in *P2i Ltd. v. Favored Tech USA Corp.*, the court failed to apply the divided framework for establishing "willfulness" on the one hand, and entitlement to enhanced damages, on the other, articulated by the Federal Circuit in *SRI*. Nevertheless, *P2i* is inapposite because the court found the willfulness claim deficient as "P2i plead[ed] only a boilerplate allegation that infringement was 'willful' and [did] not include even a conclusory allegation of egregiousness." No. 23-CV-01690-AMO, 2024 WL 4294652, at *9 (N.D. Cal. Sept. 24, 2024). Unlike *P2i*, as discussed above, Railware's Complaint not only alleges that Caltrain's infringement has been and continues to be "willful and deliberate," *e.g.*, Cmplt. ¶¶ 1, 128, 192, 286, but also provides a myriad of allegations that support a reasonable inference that Caltrain's behavior was egregious, *e.g.*, *id.* ¶¶ 49-57.

Accordingly, Railware's Complaint sufficiently pleads willful infringement.

### C.    Railware's Complaint Sufficiently Pleads Induced Infringement.

Induced infringement requires "direct infringement by some party," and that the alleged infringer "knowingly induced infringement" with "specific intent." *Entangled Media, LLC v. Dropbox Inc.*, 748 F. Supp. 3d 776, 780 (N.D. Cal. 2024). To allege direct infringement, Railware need not identify a specific infringer at the pleading stage, but rather just "another party." *AlexSam*, 119 F.4th at 46. Railware has satisfied this standard.

*First,* Railware's Complaint identifies an act of "direct infringement by some party." Railware's Complaint alleges that "Caltrain induces its users, and/or developers of the accused systems to infringe [the Accused Patents]." *E.g.*, *id.* ¶¶ 121, 185, 279. "Users and/or developers" are "some party" that use the accused systems and methods to infringe. Railware's Complaint also identifies "dispatchers" (who may or may not be Caltrain employees or contractors) that use the accused systems and methods to infringe. *E.g.*, *id.* ¶¶ 121, 69-118 ('782 patent), 132-182 ('835 patent), 196-276 ('115 patent). These allegations are sufficient. *Garrett v. TP-Link Rsch. Am. Corp.*, No. 20-CV-03491-SI, 2020 WL 6873419, at *6-*7 (N.D. Cal. Nov. 23, 2020); *Nat'l Instruments Corp. v. MathWorks, Inc.*, 113 F. App'x 895, 898 (Fed. Cir. 2004).

*Second,* Railware sufficiently pleads that Caltrain "knowingly induced infringement" with "specific intent." *See, e.g.*, Cmplt. ¶¶ 120-128, 184-193, 278-286. As discussed in Section V.B,

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

*supra*, Caltrain knew or should have known of the Asserted Patents and that the use of Caltrain's accused systems and methods infringe the Asserted Patents. More, Railware alleges that Caltrain "provid[ed] instructions, directions, information, and/or knowledge on how to use its systems or methods and/or incorporate its systems or methods into other products" to others to facilitate that infringement. *E.g.*, Cmplt. ¶¶ 121, 185, 279. Contrary to Caltrain's assertions, these allegations are sufficient under Federal Circuit law. *Core Optical,* 562 F. Supp. 3d at 382.

Further, "circumstantial evidence" such as "information available on [Caltrain]'s website including information brochures, promotional material, and contact information" can be used to establish "specific intent." *AlexSam*, 119 F.4th at 46. Railware pleads such "circumstantial evidence," including quotations and screenshots from Caltrain's public documents showing Caltrain's instructions and directions to facilitate infringement. *See, e.g.*, Cmplt. ¶¶ 77, 90, 103, 156, 265; *see also id.* at. nn. 3, 9, 10, 30, 32-37, 43, 45-47, 50, 57, 61, 62, 68, 71, 80-84, 86, 90, 96, 97, 99, 101, 119, 121, 122, 124, 128, 134, 140, 142, 143, 145, 146, 159, 163, 164, 169, 176, 178. For example, Railware's Complaint relies on Caltrain's "Study Guide" for "Roadway Worker Protection." *Id.* nn. 57, 68, 99, 101, 142, 159, 163, 176, 178. Railware's Complaint also relies on a Caltrain "Safety Briefing" touting the operation and safety benefits of using its accused systems and methods with "Enhanced Employee Protection Systems," as well as an "Annual Comprehensive Financial Report" doing the same. *See, e.g.,* Cmplt. ¶¶ 68, 137. When "[t]aken together, these allegations, which must be taken as true, are sufficient at the pleadings stage to make it plausible that [Caltrain] indeed intended that its [systems users] infringe [Railware's] patent[s]." *Alexsam*, 119 F.4th 27, 46.

Caltrain's reliance on *P2i* and *Hypermedia* is misplaced. MTD at 9-11 (citing *P2i Ltd.*, No. 23-CV-01690-AMO, 2024 WL 4294652, at *7 and *Hypermedia Navigation LLC v. Google LLC*, No. 18-cv-6137-HSG, 2019 WL 1455336, at *2 (N.D. Cal. Apr. 2, 2019)). Both *Hypermedia* and *P2i* fault the plaintiff for only making passing reference to instruction without giving any explanation as to how these instructions would lead a party to infringe. *See Hypermedia*, 2019 WL 1455336, at *3; *P2i,* 2024 WL 4294652, at *7. As discussed above, Railware's Complaint does much more. Furthermore, these cases are at odds with the Federal Circuit, which sets a lower

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

pleading standard in *Nalco. Core Optical,* 562 F. Supp. 3d at 382 (citing *Nalco*, 883 F.3d at 1355).

Accordingly, Railware's Complaint sufficiently pleads induced infringement.

**D.    Caltrain Fails to Establish that the Claims of the '115 Patent Are Invalid under 35 U.S.C. § 101 as Directed to Patent-Ineligible Subject Matter.**

**1.    The Claims of the '115 Patent were already recently found in *Railware v. Amtrak* to be directed to patent-eligible subject matter.**

In 2022, Railware sued Amtrak for, *inter alia*, infringement of the '115 patent. Amtrak, represented by the same counsel as Caltrain, moved to dismiss, arguing that the claims of the '115 patent were directed to the abstract idea of "generat[ing] and communicat[ing] data such as a code or identifier over a network for controlling items or devices" and that the claims did not recite an inventive concept. *Amtrak*, 2023 WL 5432860, at *7. In a thorough, well-reasoned opinion, the court (Judge Failla) found that "the Court cannot agree with [Amtrak]'s arguments" and denied Amtrak's motion. *Id.* at *1.

The *Amtrak* court applied the Supreme Court's two-step *Alice* framework for patent-eligibility. *Id.* at *7-*11 (applying two-step framework from *Alice Corp. Pty. v. CLS Bank Int'l,* 573 U.S. 208, 217-218 (2014). At step one, the court found "the Asserted Patents do more than string together generic allegations without describing how the alleged invention is accomplished." *Id.* at *8 (cleaned up). The court further found that the patent claims "not only state[] that railway workers will have a role in the blocking and unblocking process, but also describe[] that role and how it is accomplished." *Id.* The court criticized Amtrak for "isolating terms like 'providing,' 'configuring,' and 'generating' in the claim and specification language," and concluded that Amtrak "misses the forest for the trees." *Id.* The court ultimately concluded under *Alice* step-one, "because the Asserted Patents not only describe a desired result, but explain how to achieve it, Plaintiff [Railware] has stated a claim sufficient to withstand a motion to dismiss." *Id.* at *10.

Although the *Amtrak* court found the claims patent-eligible under *Alice* step-one and could have stopped there, the court nevertheless analyzed *Alice* step-two, finding the '115 patent is also patent-eligible under step-two. *Id.* The court concluded that "by introducing a process for generating and transmitting release codes to track workers and thereby introducing a dual-control model for railroad control, . . . the EEPS system does what no other centralized railroad control

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

system had done before." *Id.* at *11.

### 2. Caltrain's arguments are the same as those rejected by the court in *Railware v. Amtrak.*

Caltrain admits that all claims of the '115 patent were previously held to be patent-eligible in *Amtrak*. MTD at 13. Nevertheless, Caltrain contends that this Court should overrule that decision based on two alleged differences from *Amtrak*. *Id*. *First*, Caltrain asserts that its Motion is "predicated on different grounds." *Id*. *Second*, Caltrain asserts that "post-*Amtrak*" decisions addressing claims from different patents, unrelated to the Asserted Patents and not owned by Railware warrant overruling *Amtrak*. *Id.* Neither assertion has merit.

#### a. Caltrain's arguments are predicated on the same grounds as those raised in *Railware v. Amtrak.*

According to Caltrain, its Motion is "predicated on different grounds" because "Amtrak did not confront the mere idea of simply generating and transmitting a secret code, as in claims 20, 30, and 31, without unblocking the track." MTD at 13. Caltrain is incorrect.

Caltrain's alleged abstract idea is nearly identical to the alleged abstract idea analyzed in *Amtrak*. Specifically, Caltrain alleges that the claims of the '115 patent "are directed to the abstract idea of generating and transmitting a secret code associated with a block placed on a track." *Id.* Similarly, Amtrak alleged that the claims of the '115 patent were directed to the abstract idea of "generat[ing] and communicat[ing] data such as a code or identifier over a network for controlling items or devices." *Amtrak*, 2023 WL 5432860 at *7. These alleged abstract ideas are nearly identical. Both recite "generating" a code. Further, while Caltrain's alleged abstract idea uses the term "transmitting," this is the same concept as "communicating," as asserted by Amtrak. Finally, Caltrain uses the phrase "associated with a block placed on a track," whereas Amtrak used the phrase "for controlling items or devices." These differences are immaterial to the analysis.

Importantly, contrary to Caltrain's assertion, nothing in the alleged abstract idea in *Amtrak* says anything about unblocking a track. The alleged abstract idea in *Amtrak* included "generating," "transmitting," and "controlling." Accordingly, Caltrain's Motion is premised on the same alleged abstract idea addressed in *Amtrak*.

#### b. Caltrain's alleged "new" cases are duplicative of those considered in *Railware v. Amtrak* and are otherwise irrelevant and inapposite.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

Caltrain argues that several "post-*Amtrak*" decisions warrant this Court overruling the *Amtrak* court. MTD at 13. However, none of the "post-*Amtrak*" cases warrant such a conflicting result. Of the four "post-*Amtrak*" cases, only one is from the Federal Circuit, and it is duplicative of cases that the court considered in *Amtrak*. The other three cited cases are from other district courts addressing claims of different patents, unrelated to the Asserted Patents. These cases are not binding on this Court and do not outweigh the *Amtrak* court's ruling on the exact same patent claims at issue here. Nevertheless, those cases are also duplicative of cases that the court considered in *Amtrak* and are otherwise irrelevant and inapposite.

Caltrain cites *directPacket Research, Inc. v. Polycom, Inc.*, No. 2024-1147, 2025 WL 1752247 (Fed. Cir. 2025), for the proposition that claims reciting "functional steps" "with little of how the purported invention improves the functionality" may be directed to an abstract idea. MTD at 15. *directPacket* is duplicative of the same arguments made by Amtrak. In *Amtrak*, Amtrak cited *Two-Way Media Ltd v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1337 (Fed. Cir. 2017), as allegedly "finding claim abstract because it describes functional results and does not sufficiently describe how to achieve these results in a non-abstract way." MTD at 15, *Railware, Inc. v. Nat'l Railroad Passenger Corp. d/b/a Amtrak*, No. 22 Civ. 5013 (S.D.N.Y. Oct. 6, 2022). This is the same proposition for which Caltrain now cites *directPacket*. Nothing in *directPacket* compels a different result from *Amtrak*. Indeed, the Federal Circuit designated *directPacket* as nonprecedential indicating that the decision does "not add[] significantly to the body of law." Fed. Cir. R. of Prac. 32.1(b).

Caltrain further cites to three district court decisions that it alleges "found similar claim language abstract." MTD at 15. As an initial matter, this Court is not bound by the decisions of other district courts, particularly with respect to determinations on claims of different patents, unrelated to the Asserted Patents. *Valdez v. FCA US LLC*, No. 24-CV-06591-JSC, 2025 WL 732241, at *3 (N.D. Cal. Mar. 7, 2025). Even if this Court is inclined to consider these other "post-*Amtrak*" district court cases, the cases are irrelevant and inapposite.

*First*, *ScanComm LLC v. Block, Inc.*, 775 F. Supp.3d 1263 (N.D. Ga. Mar. 21, 2025), is irrelevant and inapposite. According to Caltrain, the *ScanComm* court found that "there is nothing

inventive about how the QR code is generated" and that the "QR code is used in its conventional sense: to encode and transmit data." MTD at 15. Caltrain's attempts to analogize the "QR code" in *ScanComm* to the claims of the '115 patent is flawed for a few reasons. As an initial matter, in *ScanComm*, the "QR code" was previously known and used conventionally to encode and retrieve data from a server. *ScanComm*, 755 F. Supp. 3d at 1273. Here, in contrast, the secret code of the claims of the '115 patent was not previously known or part of any conventional system for centralized train control. Further, the claims of the '115 patent set forth with particularity that the secret code is associated with a blocked, selected track section and is sent to a remote user terminal. Caltrain does not point to any previously known and conventional system for centralized train control that utilized the claimed novel and unconventional network architecture, including the claimed remote user terminal for receiving a secret code that is associated with a blocked, selected track section. *See* MTD. Indeed, Caltrain cannot do so. As concluded by the *Amtrak* court, "by introducing a process for generating and transmitting release codes to track workers and thereby introducing a dual-control model for railroad control, . . . the EEPS system does what no other centralized railroad control system had done before." *Amtrak*, 2023 WL 5432860 at *11. Still further, Caltrain tellingly makes no effort to do a comparative analysis of the claims at issue in *ScanComm* with those of the '115 patent. If it had done so, it would further illustrate the flaws in Caltrain's reliance on this case.

*Second*, *All Terminal Servs., LLC v. Roboflow, Inc.*, No. 25-476-WCB, 2025 WL 2576394 (D. Del. Sept. 5, 2025), is similarly irrelevant and inapposite. Relying on *All Terminal Servs.*, Caltrain incorrectly argues that the claims of the '115 patent do not recite the "claimed advances over the prior art" and that, therefore, any advances described in the specification are irrelevant to the *Alice* analysis. MTD at 14. In particular, Caltrain asserts that the independent claims of the '115 patent allegedly do not recite that the secret code must be returned by the railway field worker to the CTC system to unblock the track. *Id*. This is flawed for several reasons. As an initial matter, Caltrain ignores the well-reasoned analysis of the *Amtrak* court to the contrary. *Amtrak*, 2023 WL 5432860 at *1, *6. Additionally, for example, claims 22, 23, 33, and 34 of the '115 patent do recite that the secret code is returned by the railway field worker to unblock the track. Indeed, each of

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

these claims recites returning a second secret code and either removing the block (claims 22 and 33) or maintaining the block (claims 23 and 34), depending on whether the returned code matches the secret code that was sent to the remote user terminal. *Id.*

Further, Caltrain admits that another advance recited in the specification of the '115 patent is "the power to lift a track block is in the hands of the worker." *Id.* (cleaned up). This advance over the prior art (as also recognized by the *Amtrak* court) is plainly recited in the claims of the '115 patent. For instance, claim 20 recites that the "secret code" is "associated with the at least one selected track section" and "transmit[ted] . . . to a remote user terminal." '115 patent, cl. 20; *see also id.*, cls. 30, 31. By explicitly reciting that the code is "secret," "associating" the secret code with the at least one track section, and then transmitting the secret code to a remote user terminal, the claims of the '115 patent place the power to lift the block in the hands of the railway field worker in possession of the remote user terminal. At the very least, the meanings of, for example, "secret code" and "associating" the secret code with the at least one track section and then transmitting the code to a remote user terminal, present issues of claim construction and/or factual inquiries that preclude ruling on patent-eligibility at the pleading stage. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380 (Fed. Cir. 2019).

Caltrain also relies on *All Terminal Servs.* for the incorrect proposition that the claims of the '115 patent fail to recite a new and unconventional network because the individual components are allegedly "generic." MTD at 14. Like in *Amtrak*, Caltrain "misses the forest for the trees" by analyzing the components individually rather than as a whole, and by failing to appreciate the new and unconventional functionality and architecture of the components as a whole. For example, while individual components may be pre-existing devices, the new and unconventional architecture lies in their particular arrangement and functionality. Cmplt., ¶¶ 2, 34. As the *Amtrak* court recognized and was "inclined to agree" with, "[b]y introducing a process for generating and transmitting release codes to track workers and thereby introducing a dual-control model for railroad control, Plaintiff alleges that the EEPS system does what no other centralized railroad control system had done before." *Amtrak*, 2023 WL 5432860 at *11. Stated differently, the *Amtrak* court expressly rejected Amtrak's argument (repeated here by Caltrain) that "the Asserted Patents

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

lack the requisite element of inventiveness because they use generic computer network components to achieve an abstract end." *Id.*

*Finally*, *RFC Lenders* is equally irrelevant and inapposite. Caltrain relies on *RFC Lenders* for the incorrect proposition that claims directed to "detecting," "transmitting," and "processing" data to monitor vehicles are presumptively invalid because they use "generic hardware." MTD at 16 (citing *RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*, 743 F. Supp. 3d 911, 920 (W.D. Tex. 2024). This argument fails for the same reasons as those made with respect to *All Terminal Servs.*, discussed above. More, Caltrain makes no attempt to explain how the "generic hardware" at issue in *RFC Lenders* is the same as the components of the '115 patent claims. This is fatal. Caltrain's conclusory and unsupported assertion that the claims of the '115 patent use "generic hardware" does not establish invalidity, particularly where, as here, the claim elements the '115 patent cover new and unconventional architecture of the components to achieve previously unknown functionality. *Amtrak*, 2023 WL 5432860 at *11; *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-50 (Fed. Cir. 2016).

### a. This Court should accord the decision in *Railware v. Amtrak* "substantial weight" and "reasoned deference."

This district has recognized "the importance of uniformity in the treatment of a given patent suggests a level of deference to previous court constructions." *Dolby Labs., Inc. v. Intertrust Techs. Corp.,* No. 19-cv-03371-EMC, 2021 WL 369542, at *5-6 (N.D. Cal. Feb. 3, 2021) (citation omitted). Indeed, although it is not bound by them, this Court accords "substantial weight" and "reasoned deference" to other courts' decisions on issues pertaining to the same patent. *Id*. The amount of deference turns on the persuasiveness of the other court's decision. *Capella Photonics, Inc. v. Ciena Corp.*, 546 F. Supp. 3d 977, 983 (N.D. Cal. 2021). While the issue of deference most commonly arises in the context of patent claim construction, it should likewise apply here because patent-eligibility, like claim construction, is ultimately a legal issue with factual underpinnings. *Compare Ancora Techs., Inc. v. Roku, Inc.*, 140 F.4th 1351, 1357 (Fed. Cir. 2025) *with CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1095 (Fed. Cir. 2021).

Caltrain's Motion makes the same arguments as those considered and rejected by the

-17-

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

*Amtrak* court. The alleged abstract ideas are essentially identical, and the allegedly "new" cases add nothing "new" for this Court to reconsider. Accordingly, this Court should accord "substantial weight" and "reasoned deference" to the *Amtrak* court's decision and deny Caltrain's Motion.

### 3. Caltrain fails to establish that the claims of the '115 Patent are directed to patent-ineligible subject matter.

Although the Court should deny Caltrain's Motion based on the *Amtrak* court's decision, if the Court is inclined to revisit the patent-eligibility of the '115 patent anew, this Court should likewise deny Caltrain's Motion. "[A]n alleged infringer asserting an invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing evidence." *Fortinet, Inc. v. Forescout Techs., Inc.*, 543 F. Supp. 3d 814, 821 (N.D. Cal. 2021) (citations omitted). This is true even at the pleading stage. *Id.* Caltrain cannot meet this heavy burden.

The Supreme Court's decision in *Alice* established a two-step test for patent eligibility. *Alice* at 573 U.S. at 217-18. *First*, a court determines whether a patent claim is "directed to one of [the] patent-ineligible concepts." *Id*. If the claim is not "directed to one of [the] patent-ineligible concepts," then the claim is patent eligible, and the inquiry ends. *Id.*, *see also Visual Memory LLC v. NVIDIA Corp.,* 867 F.3d 1253, 1262 (Fed. Cir. 2017). *Second*, if the claims are directed to a patent ineligible concept, the court must then consider the elements of the claim individually and as an ordered combination to determine whether they contain an "inventive concept" that "transform[s] the nature of the claim into a patent-eligible application." *Alice*, at 217-18. The claims of the '115 patent are patent-eligible under this two-step test.

#### a. *Alice* Step One: the claims of the '115 Patent are not directed to an abstract idea.

##### i. Caltrain improperly overgeneralizes the claims of the '115 Patent.

Caltrain argues that the claims of the '115 patent are directed to the allegedly abstract idea of "generating and transmitting a secret code associated with a block placed on a track." MTD at 13. This is despite the fact that Caltrain identifies no case in which "generating and transmitting a secret code associated with a block placed on a track" has been found to be an abstract idea. Caltrain's cursory and over-simplified characterization of the claims is contrary to governing law.

*CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020) (instructing courts to be careful to avoid oversimplifying claims). The claims of the '115 patents are "more complex" than Caltrain asserts. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019). For instance, Caltrain ignores the significant change in the distributed railway control system—introducing a new and unconventional network architecture and functionality for generating, transmitting, receiving and using a secret code that is associated with a block placed on a track by a dispatcher and that is transmitted to a remote user terminal, which reconfigures the network arrangement and performs never-before-seen operations to control the placement and removal of blocks by a centralized railway control apparatus—and simply states that the claimed methods are about "generating and transmitting" a code. MTD at 13. Caltrain misses the forest for the trees. The new and unconventional network architecture and functionality, including a remote user terminal and a centralized railway control apparatus that perform previously unknown operations within that new and unconventional network architecture, is expressly recited in the claims of the '115 patent. *E.g.,* '115 patent at 15:22; 16:37; 16:57-58. Caltrain's failure to account for the expressly claimed unconventional network architecture and functionality in favor of an oversimplified restatement of the claims is fatal to Caltrain's Motion. *CardioNet,* 955 F.3d at 1371.

### ii. The claims of the '115 Patent recite specific technical solutions to the specific technical problem of errant, improper, and/or premature block removal.

The claims of the '115 patent recite a specific technological solution to the problem of errant, improper, and/or premature release of blocks on tracks in a centralized railway control system, which could lead to railway worker injury or death, as well as damage to equipment and property. This specific technical solution includes "an unconventional network architecture for generating, transmitting, receiving and using a code that is associated with a block placed on a track by a dispatcher and that is transmitted to the railway field worker(s) that is working on the track, but otherwise is not readily available to the dispatcher." Cmplt., ¶¶ 2, 34; '115 patent at 14:60-22. "By putting the power to lift a block in the hands of the railway field worker(s) working under its protection, Mr. Pirtle's patented inventions prevent errant unblocking of track(s) within the railway network and ultimately save lives, prevent injury, and prevent damage to equipment

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

and/or property." Cmplt., ¶ 34. Thus, this specific technological solution addresses the problem of errant, improper, and/or premature block removal in a centralized traffic control system and is explicitly reflected in the claim elements of the '115 patent.

As an example, claim 20 of the '115 patent recites "a processor" that controls "a plurality of track sections in the railway network, wherein each track section is associated with a corresponding interlock and is disposed in any of said plural railways of said railway network that is managed by centralized control operation from the railway control apparatus[.]" '115 patent at 14:64-15:2; Cmplt., ¶ 40. The one or more processors, via the "centralized control operation," controls "one or more interlocks amongst the plurality of railway interlocks dispersed in said plural railways of said railway network, to block railway traffic to one or more specified track sections[.]" '115 patent at 15:3-7; Cmplt., ¶ 40. "[A] memory device" stores computer executable instructions, and the one or more processors executes the computer executable instructions to "receive a selection of at least one track section amongst the plurality of track sections; transmit a block signal to the corresponding interlock associated with the at least one selected track section, to place a block on the selected track section by said centralized control operation from the railway control apparatus; generate a secret code associated with the at least one selected track section; and transmit the secret code to a remote user terminal." '115 patent at 15:8-22; Cmplt., ¶ 40. This new and unconventional network architecture and functionality for generating, transmitting, receiving and using a secret code that is associated with a block placed on a track by a dispatcher and that is transmitted to a remote user terminal reconfigures the network arrangement and is a wholly unique introduction to centralized railway control systems that altered the particular way in which blocks are placed and removed. Accordingly, claim 20 of the '115 patent is not focused on a "result," as Caltrain incorrectly asserts. MTD at 13. Rather, claim 20 is focused on a patent-eligible specific technical solution—utilizing a novel and unconventional network configuration and functionality with components operating in unconventional ways—for addressing the specific technical problem of errant, improper, and/or premature block removal in a centralized railway control system, so that the power to remove a block is distributed between the remote dispatcher and the railway field worker. *See EcoServices, LLC v. Certified Aviation Serv., LLC,* 830 Fed. Appx. 634,

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

642 (Fed. Cir. 2020) ("[T]he claims are directed to a specific system that improves jet engine washing; the claims are not directed to 'a result or effect that itself is the abstract idea[.]'"); *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) ("The claims thus require specific, technological means—parallel data stream recording with the low-quality recording wirelessly transferred to a remote device—that in turn provide a technological improvement[.]").

Caltrain's argument that the '115 patent's "independent claims never return the code," MTD at 13, is confusing, at best, and otherwise misses the mark. *First*, the fact that the independent claims do not have explicit language regarding return of the secret code to remove the block does not change the fact that the generation of a secret code associated with the block and transmission of the secret code to the remote user terminal achieves a specific technological solution to a specific technical problem by creating a novel and unconventional network architecture and functionality in which "the power to lift a block [is put] in the hands of the railway field worker(s) working under its protection." Cmplt., ¶ 34. *Second*, the language of the independent claims of the '115 patent does not preclude the return of the secret code to remove the block. The independent claims use the "comprising" transition phrase, indicating that other, unrecited steps (*e.g.,* the return of the code) or components may be present. *Eye Therapies, LLC v. Slayback Pharma, LLC*, 141 F.4th 1264, 1269 (Fed. Cir. 2025) (citation omitted). Along these lines and contrary to Caltrain's assertion, the dependent claims do indeed include explicit language for returning the secret code (*see, e.g.* '115 patent, cls. 22-23, 33, 34), thereby indicating that returning the code is also within the scope of the independent claims. *Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022).

Accordingly, the claims of the '115 patent recite a specific technological solution to a specific technical problem.

### iii.     The claims of the '115 Patent are similar to claims the Federal Circuit has held patent-eligible.

The Federal Circuit has repeatedly found that claims directed to a specific technical solution addressing a specific technological problem similar to the claims of the '115 patent are

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

not directed to an abstract idea. For example, the claims of the '115 patent are akin to those in *SRI*. In *SRI*, the Federal Circuit found that claims utilizing generic computing terms such as "deploying," "detecting," "generating," and "automatically receiving" were nonetheless not directed to an abstract idea because "the claims are more complex than merely reciting the performance of a known business practice on the Internet and are better understood as being necessarily rooted in computer technology in order to solve a specific problem in the realm of computer networks." *SRI*, 930 F.3d at 1303. Specifically, the Federal Circuit found that "the representative claim improves the technical functioning of the computer and computer networks by reciting a specific technique for improving computer network security." *Id.* at 1304. Similarly, here, the claims of the '115 patent improve the technical functioning of centralized railway control systems by reciting specific techniques for improving the systems' protection against errant, improper, and/or premature block removal. Caltrain does not allege—nor can it—that the claims are nothing more than "reciting the performance of a known business practice on the Internet." *See id*. Rather, the claims at issue here are "more complex" because they are "necessarily rooted in computer technology"—centralized railway control systems—to solve a specific technical problem—the errant, improper, and/or premature removal of track blocks. *See id.*

The claims of the '115 patent are also similar to the patent claims at issue in *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018). In *Ancora*, the Federal Circuit held that "[i]mproving security . . . can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem." 908 F.3d at 1348. Similar to *Ancora*, the claims at issue here describe specific techniques to improving the railway control systems network security using "specific technique[s] that depart[] from earlier approaches to solve a specific computer problem." *See id.* at 1348. Specifically, the claims of the '115 patent protect against the errant, improper, and/or premature removal of track blocks by implementing a specific new technique (in which, for example, a railway field worker receives and must provide, via a user terminal, a secret code in order to remove a block). *See* Cmplt., ¶ 40. Thus, similar to the claims at issue in *Ancora*, the claims of the '115 patent are not directed towards an abstract idea.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

*SRI* and *Ancora* are not outliers, but part of a long line of Federal Circuit holdings that specific technical solutions, like the ones at issue here, are patent-eligible. *See, e.g.*, *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019); *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys.*, Inc., 879 F.3d 1299, 1305 (Fed. Cir. 2018); *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017). Because the claims of the '115 patent are directed to specific technical solutions for addressing a specific technical problem, they are not directed to an abstract idea. Caltrain's Motion should be denied on this basis alone as it cannot satisfy *Alice* step one.

### b.    *Alice* Step Two: the claims of the '115 Patent recite significantly more than an abstract idea.

Caltrain offers a cursory, and wholly deficient, analysis under *Alice* step two. Although Caltrain pays lip-service to the requirement that the claims must be analyzed "individually and as an ordered combination," Caltrain does not actually analyze the claims of the '115 patent as an ordered combination at all. Indeed, with no analysis whatsoever, Caltrain simply assumes the components are "generic" and "lack(s) an unconventional arrangement of the same." MTD at 18. This is fatal to Caltrain's burden under *Alice* step two. The "ordered combination" analysis looks for "the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. Novel network arrangements provide an inventive concept, even if they include standard computing components. *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 135 (Fed. Cir. 2022). Caltrain's assertions to the contrary are without merit.

Caltrain's argument that Railware's Complaint does not plead how the unconventional network operates, MTD at 18-19, is flawed. Railware's Complaint does plead as much. *E.g.*, Cmplt., ¶¶ 34, 40. Indeed, for example, the independent claims of the '115 patent recite that the user terminal is "remote" from the other components thereby explicitly setting forth the new and unconventional architecture and functionality by which improved centralized railway control systems are achieved, as well as the novel and unconventional interactions between the claimed components. *E.g.*, *id*. Further, contrary to Caltrain's arguments, the claims of the '115 patent recite exactly how the components are arranged and how the operations are performed to achieve the

desired result. Recited in the claims of the '115 patent are new systems, architecture, and functionality for centralized railway control systems. In other words, the elements of the claims, considered as an ordered combination recite an unconventional, non-routine, and not well-understood arrangement of components. Here, the claims of the '115 patent introduce, among other things, a "remote user terminal" and other networked components to the network configuration that serve a function and perform operations that were not present in prior art centralized railway control systems. Cmplt., ¶¶ 34, 40. Claim 20 of the '115 patent, for example, recites a number of novel and unconventional network of components and functionalities, including a centralized railway control apparatus that "generate[s] a secret code associated with the at least one selected track section" and "transmit[s] the secret code to a remote user terminal." '115 patent at 15:22, *see also id.* at 16:37, 16:57-58. The modification of existing components and introduction of wholly new components to perform previously unknown operations within the railway control system changes the structure of the railway control system network by permitting the railway control system to generate, transmit, receive and use a secret code to address errant, improper, and/or premature release of a block. Such operations are unconventional in prior centralized railway control systems, a fact that Caltrain does not address and cannot be ignored. Cmplt., ¶¶ 34, 40.

The claims of the '115 patent are analogous to the claims in *Coop. Ent., Inc. v. Kollective Tech., Inc.* In *Coop*, the Federal Circuit held that the claims at issue "recite[] a specific technical solution that is an inventive concept: it recites a particular arrangement of peer nodes for distributing content 'outside controlled networks and/or [CDNs].'" *Coop*, 50 F.4th at 133 (emphasis in original). The Federal Circuit reasoned that "useful improvements to computer networks are patentable regardless of whether the network is comprised of standard computing equipment" and held that the "particular arrangements of elements [in the patents] is a technical improvement over prior art ways of arranging networks for distributing video content." *Id.* at 135 (citations omitted). Like the claims in *Coop*, the claims of the '115 patent describe a new arrangement of networked components and unconventional operations that provide a technical improvement over prior systems for block placement and block removal on railway tracks.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

### 4.   Caltrain's arguments regarding the dependent claims are irreconcilable with its arguments for overruling *Railware v. Amtrak*.

Caltrain confusingly argues: "Amtrak did not confront the mere idea of simply generating and transmitting a secret code, as in claims 20, 30, and 31, without unblocking the track. Rather, Amtrak discussed transmitting and returning a code." MTD at 13. Caltrain contradicts itself by simultaneously arguing that dependent claims 22-23 and 33-34 "do not save eligibility because they simply receive a new second code, compare the second code with the stored secret code, and act based on that comparison." MTD at 17. But those dependent claims precisely recite the very "returning a code" limitations on which Caltrain bases its arguments. MTD at 13. Caltrain's arguments are irreconcilable. Either "returning a code" is important for patent eligibility (in which case the dependent claims confer eligibility, as admitted by Caltrain) or it is not important (in which case Caltrain's arguments regarding patent-eligibility are not "predicated on different grounds" than *Amtrak* (MTD at 13)). This irreconcilable contradiction underscores the infirmities of Caltrain's patent-eligibility arguments.

## VI.   ALTERNATIVELY, RAILWARE REQUESTS TO AMEND

In the alternative, if the Court is inclined to grant Caltrain's Motion, Railware respectfully requests the opportunity to amend its Complaint to address any alleged deficiencies. "Leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). Caltrain has made no argument in its Motion that any of its alleged deficiencies render Railware's Complaint futile or incapable of amendment. And Caltrain cannot make any new arguments for the first time in its reply. *See, e.g.*, *Tigo Energy Inc. v. SunSpec All.*, 679 F. Supp. 3d 947, 958 (N.D. Cal. 2023).

## VII.   CONCLUSION

For the foregoing reasons, Railware respectfully requests that the Court deny Caltrain's Motion. Alternatively, if the Court is inclined to grant Caltrain's Motion, Railware respectfully requests the opportunity to amend its Complaint to address any alleged deficiencies.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
SILICON VALLEY

DATED:  December 3, 2025

Respectfully submitted,

**ROBINS KAPLAN LLP**

By: */s/ Bryan J. Vogel* _____

Bryan J. Vogel (*pro hac vice*)
BVogel@RobinsKaplan.com
Derrick J. Carman (*pro hac vice*)
DCarman@RobinsKaplan.com
Travis K. Waller (*pro hac vice*)
TWaller@RobinsKaplan.com
Nishi A. Tavernier (*pro hac vice*)
NTavernier@RobinsKaplan.com
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Tel.: (212) 980-7400
Fax: (212) 980-7499

Li Zhu (Bar No. 302210)
LZhu@RobinsKaplan.com
**ROBINS KAPLAN LLP**
555 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065
Tel.: (650) 784-4040
Fax: (650) 784-4041

*Attorneys for Plaintiff Railware, Inc.*