United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

RAILWARE, INC.,

             Plaintiff,

    v.

PENINSULA CORRIDOR JOINT
POWERS BOARD,

             Defendant.

Case No.  5:25-cv-05725-BLF

**ORDER GRANTING MOTION TO DISMISS**

[Re:  ECF No. 31]

Defendant Peninsula Corridor Joint Powers Board d/b/a Caltrain ("Caltrain") moves to dismiss Plaintiff Railware, Inc.'s ("Railware") complaint for patent infringement.  ECF No. 31 ("Mot."); ECF No. 64 ("Reply").  The complaint asserts infringement of three claims across three patents (collectively, the "Asserted Claims"), namely, claim 5 of U.S. Patent No. 9,517,782 ("'782 patent"), claim 19 of U.S. Reissue Patent No. RE47,835 ("RE'835 patent"), and claim 20 of U.S. Reissue Patent No. RE49,115 ("RE'115 patent").  *See* ECF No. 1 ("Compl.").  Railware opposes the motion.  ECF No. 53 ("Opp.").  The Court heard oral argument on February 19, 2026.  ECF No. 72; see also ECF No. 74 ("Tr.").

For the following reasons, the motion is GRANTED.

I.    **BACKGROUND**

  1.  **Railware's Patents**

During maintenance and repair operations, railway field workers must sometimes enter onto train tracks, requiring trains to be temporarily blocked from traversing track sections when certain tasks are being performed.  Compl. ¶ 2.  Entering an active track area poses substantial safety risks to track workers, who are defenseless against traffic.  Consequently, over time, various safety systems have been developed to ensure worker safety, such as alarm systems that alert

workers to incoming train traffic so that they can vacate the track area before incoming trains arrive. *See id.* ¶ 29. These systems have proven to be inadequate in protecting railway field workers, however, and most modern railroads today use dispatcher-operated centralized traffic control ("CTC") systems to view and control the movement of trains within a given railway network. *See id.* ¶¶ 26, 29.

CTC systems are generally composed of a combination of hardware and software components and utilize wireless networks to facilitate communication between train dispatchers and railway field workers. Compl. ¶ 28. One common way that railroads use CTC systems to protect field workers during maintenance and repair tasks is by having the train dispatcher remotely control the tracks used by trains. *See id.* ¶ 30. Using the CTC system's control console, the dispatcher can "block" sections of train tracks being operated on by field workers and temporarily reroute trains away from those blocked track sections. *See id.* These systems are vulnerable to human error, however. Such errors include blocks being mistakenly removed by dispatchers who either believe that the work has been completed or who—intending to remove a different block—accidentally remove a block on a track section where work is still being carried out by field workers. *Id.* ¶¶ 26, 30.

Railware furnishes Dispatch X, a CTC product "used by some of the busiest railroads in the country." Compl. ¶ 24. Dispatch X incorporates the Enhanced Employee Protection System ("EEPS"), a safety technology claimed by the Asserted Claims that was developed by Railware's owner (and inventor on the asserted patents) Ross Pirtle after he observed a tragic accident that resulted in the deaths of several railway field workers. *Id.* ¶¶ 25, 33. According to Railware, EEPS as incorporated into Dispatch X is different from other CTC systems in that it requires dispatchers to work together with railway field workers to remove blocks, thereby ensuring that the blocks are removed only once workers operating on affected train track sections have confirmed that it is safe to do so. *See id.* ¶¶ 34–36. Railware describes its patented EEPS functionality in the complaint as follows:

> [The claimed methods and systems use] an unconventional network architecture for generating, transmitting, receiving and using a code that is associated with a block placed on a track by a dispatcher and that is transmitted to the railway field worker(s) that is working on the

2

> track, but otherwise is not readily available to the dispatcher. In order to remove the block on a track, the code must be returned to the CTC system, such as by the dispatcher receiving the code from the railway field worker, for example, through a radio transmission.

*Id.* ¶ 34. The Asserted Claims are "directed to methods and systems for centralized railway control." *Id.* ¶¶ 38–40.

Claim 5 of the '782 patent is directed to a "method to enhance railway control to protect safety of railway workers on or near railway tracks." *Id.* ¶ 38. The claimed method involves an interactive user device (possessed by the railway field worker) that displays information received from a control railway apparatus, such that (1) the user can request that the railway control apparatus place a block on one or more specified track sections; (2) the railway control apparatus generates a release code and transmits it to an electronic contact address accessible by the user (i.e., a railway field worker); and (3) the railway control apparatus removes the block only upon receiving the release code from the user via the terminal. '782 patent col. 12 ll. 13–36.[1]

Claim 19 of the RE'835 patent is directed to a "method for controlling railway access using a railway traffic control apparatus of a centralized railway control system configured for centralized control of traffic of a centrally controllable railway network including plural railways and a plurality of railway traffic interlocks dispersed in said plural railways." Compl. ¶ 39. The claimed apparatus comprises three components: (1) a user interface of a CTC apparatus that places blocks on one or more specified track sections across the plurality of railways; (2) generation of a block removal code and transmission of that code to a unique contact for the relevant field worker; and (3) removal of the block only upon the entry of the removal code. RE'835 patent col. 15 ll. 5–39.

Claim 20 of the RE'115 patent is directed to a "railway control apparatus for centralized control of a centrally controllable railway network including plural railways and a plurality of railway interlocks dispersed in said plural railways." Compl. ¶ 40. Unlike the other two Asserted Claims, claim 20 does not specifically require that generated code be returned to the dispatcher by the railway field worker—in other words, it does not require that the dispatcher and worker work

---

[1] The '782 patent, RE'835 patent, and RE'115 patent are attached as exhibits A, B, and C to the Complaint, respectively. *See* ECF Nos. 1-1, 1-2, 1-3.

3

together to unblock the track.  The claim recites as follows:

> a processor for controlling a plurality of track sections in the railway network, wherein each track section is associated with a corresponding interlock and is disposed in any of said plural railways of said railway network that is managed by centralized control operation from the railway control apparatus, the processor controlling, by said centralized control operation, one or more interlocks amongst the plurality of railway interlocks dispersed in said plural railways of said railway network, to block railway traffic to one or more specified track sections; and
>
> a memory device storing computer-executable instructions, wherein execution of the computer executable instructions by the processor causes the railway control apparatus to:
>> [1] receive a selection of at least one track section amongst the plurality of track sections;
>> [2] transmit a block signal to the corresponding interlock associated with the at least one selected track section, to place a block on the selected track section by said centralized control operation from the railway control apparatus;
>> [3] generate a secret code associated with the at least one selected track section; and
>> [4] transmit the secret code to a remote user terminal.

RE'115 patent col. 14 l. 64–col. 15 l. 22.

### 2.  Procedural Background

Railware filed the complaint on July 8, 2025, against Caltrain, a regional rail operating lines throughout Northern California.  Compl. ¶ 58.  In the complaint, Railware alleges that Caltrain has infringed and continues to infringe the Asserted Claims by, *inter alia*, "us[ing] a CTC system that it refers to internally as the 'Rails Operations Control System' or 'ROCS,'" which Railware alleges is "Caltrain's internal nomenclature for its implementation of the RailwayNet$^{SM}$ system with EEPS and/or EEPS-like functionality and/or the [Advanced Information Management ("AIM")] system with EEPS and/or EEPS-like functionality or other same or similar systems or methods."  *Id.* ¶ 59 (footnote omitted); *see also id.* ¶ 64 ("Caltrain's implementation and use of the RailwayNet$^{SM}$ system with EEPS and/or EEPS-like functionality and/or the AIM system with EEPS and/or EEPS-like functionality or any same or similar systems or methods in connection with its rail network(s) infringes the Asserted Patents.").

In addition to the Asserted Claims, Railware alleges that Caltrain may also directly infringe "more claims" of the three asserted patents.  *See, e.g.*, Compl. ¶¶ 65–67, 73, 136, 200. The complaint further alleges that Caltrain is liable as an indirect infringer in violation of 35

United States District Court
Northern District of California

U.S.C. § 271(b), asserting that "Caltrain induces its users, and/or developers of its sytems or methods to infringe" the Asserted Claims "by providing instructions, directions, information, and/or knowledge on how to use its systems and/or incorporate its systems or methods into other products." *Id.* ¶ 121. Railware alleges that Caltrain's direct and indirect infringement is willful because Caltrain had notice of the asserted patents prior to and during the period of infringement, including after Railware filed suit against a different regional rail operator—National Railroad Passenger Corporation d/b/a Amtrak—in the Southern District of New York, in which Railware asserted various patent claims, including those asserted here. *See id.* ¶¶ 122–25; *see also Railware, Inc. v. Nat'l R.R. Passenger Corp.*, No. 22-cv-05013-KPF, (S.D.N.Y. filed June 15, 2022).

The Court approved the parties' stipulations to extend time for Caltrain to respond to the complaint on August 12, 2025, September 10, 2025, and September 24, 2025. *See* ECF Nos. 19, 21, 23. On October 8, 2025, Caltrain filed the instant motion. Caltrain concurrently moved to stay discovery in this case until resolution of its motion to dismiss, *see* ECF No. 32, which the Court denied on January 14, 2026, *see* ECF No. 66.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). The Court need not, however, "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)).

While a complaint need not contain detailed factual allegations, it "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Upon granting a motion to dismiss, a court has discretion to allow leave to amend the complaint pursuant to Rule 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital*. In *Eminence Capital*, the Ninth Circuit identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *See* 316 F.3d at 1052.

"[I]n many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). However, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing on the record refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6)." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

### B. Patent-Eligible Subject Matter Under Section 101

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has long held that section 101 contains an "implicit exception," namely, "[l]aws of nature, natural phenomena, and abstract ideas." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). "Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry, and any claim of an application failing the requirements of § 101 must be rejected even if it meets all of the other legal

United States District Court
Northern District of California

United States District Court
Northern District of California

requirements of patentability." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd sub nom.*, *Bilski v. Kappos*, 561 U.S. 593 (2010).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), and *Alice*, the Supreme Court set forth the relevant analytical framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217.  At step one, the Court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts" such as an abstract idea.  *Id.*  At step two, the Court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 78–79).

At step one, "[t]o determine whether a claim is 'directed to' a patent ineligible concept, we evaluate 'the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter.'" *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (quoting *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021)).  In the context of software-based claims, step one "often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Id.* at 1362–63 (quoting *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022)).  A "telltale sign of abstraction" is when the claimed functions are "mental processes that 'can be performed in the human mind' or 'using a pencil and paper.'" *PersonalWeb*, 8 F.4th at 1316 (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371–72 (Fed. Cir. 2011)).

At step two, the Court "consider[s] the elements of [the] claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 79, 78).  "[T]ransformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72).  Where a claim is directed to an abstract idea, the claim must include "an 'inventive concept'

7

sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72–73).

### III.    DISCUSSION

#### 1.  Railware's Infringement Allegations

##### A.  Direct Infringement

Caltrain argues that the complaint fails to adequately allege direct infringement because Railware "never identifies with evidence how a single product allegedly infringes each limitation of the Asserted Claims," urging that the complaint's "haphazard[] parrot[ing] over one hundred times (or the like) that 'RailwayNet$^{SM}$ system with EEPS and/or *EEPS-like functionality* and/or the AIM system with EEPS and/or *EEPS-like functionality or any same or similar systems or methods*' infringe the Asserted Claims" fails to provide sufficient notice of which products allegedly infringe the asserted claims.  Mot. at 4 (citing Compl. ¶¶ 73 75, 77, 136–38, 200–01, 206).  Caltrain further argues that Railware fails to plausibly allege that any of the accused products (whatever they may be) use a code "not readily available to the dispatcher" or recite "generat[ing] a code," as required by the Asserted Claims.  *Id.* at 6–7.  Railware responds that the complaint "discusses the accused systems and methods in detail," contending that, by "specifically identif[ying] particular exemplary accused systems and methods by name," it has provided Caltrain with sufficient notice of Railware's infringement allegations.  Opp. at 4–5.

While a patentee need not plead infringement on an "element-by-element basis," the complaint must articulate with sufficient particularity "why it is plausible that the accused product infringes the patent claim."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1324, 1352–53 (Fed. Cir. 2021).  A plausible claim for infringement "requires at least some factual allegations to support a plausible inference that the product at issue satisfies a claim limitation."  *Estech Sys. IP, LLC v. Freshworks Inc.*, No. 24-cv-02525-EJD, 2025 WL 834494, at *3 (N.D. Cal. Mar. 17, 2025).  And "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8*, 4 F.4th at 1353.  Courts in this district regularly dismiss complaints for patent infringement that merely identify an "expansive list of product types" without "identif[ying] a

United States District Court
Northern District of California

single product type and explain[ing] how this product incorporate[s] the allegedly infringing component." *Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-cv-05784-JST, 2020 WL 7392909, at *4 (N.D. Cal. July 23, 2020).

The complaint, with its voluminous footnotes and repeated references to systems "with EEPS and/or EEPS-like functionality and/or the AIM system with EEPS and/or EEPS-like functionality or any same or similar systems or methods, as implemented and used and continues to be used by Caltrain," Compl. ¶ 100, utterly fails to put Caltrain (or the Court, for that matter) on notice as to which products or systems are being accused. Far from performing the basic function of identifying even a single example of alleged infringement, *cf. Celgard*, 2020 WL 7392909, at *4, the Complaint instead mixes and matches a vague, virtually unbounded assortment of unknown products and then conclusorily alleges that they practice each limitation of the Asserted Claims. *See, e.g.*, Compl. ¶¶ 93–100. In this respect, the Court further agrees with Caltrain that the complaint also fails to identify a single accused product or system practicing the "not readily available" and "code generating" limitations required by the Asserted Claims.

Dismissal is appropriate because the complaint is facially deficient in at least two respects. First, the complaint fails to identify a single exemplary product or system that meets each of the limitations of the asserted claims. *See Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. 10-cv-04458-EMC, 2011 WL 4079231, at *4 (N.D. Cal. Sept. 12, 2011) (dismissing complaint for "failure to specify *which* of its products allegedly infringe"); *see also CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 500 (W.D. Tex. 2023), *appeal dismissed*, 2024 WL 2587917 (Fed. Cir. 2024) (No. 23-2428) (dismissing complaint because "Plaintiff is still mixing and matching software products to satisfy limitations of the various infringed patent claims"). While the Court is mindful that, absent discovery, Railware will have limited access to the proprietary nomenclature that Caltrain uses in cataloging its products, *see* Opp. at 6–7, Railware must at a minimum identify with particularity an example of Caltrain performing each step of the Asserted Claims.

Second, the complaint fails to allege any facts tending to show how Caltrain infringes. It is not enough for the Railware to merely go through each claim limitation and then conclusorily

allege that those limitations are practiced by Caltrain. *SmartWatch MobileConcepts, LLC v. Google LLC*, No. 24-cv-00937-RFL, 2024 WL 2853966, at \*1 (N.D. Cal. May 21, 2024) ("The factual allegations are insufficient to state a plausible infringement claim."); *People.ai, Inc. v. SetSail Techs., Inc.*, No. 20-cv-09148-WHA, 2021 WL 2333880, at \*2–5 (N.D. Cal. June 8, 2021) (dismissing because "complaint does not address *why* it is plausible that [the accused product] uses the specific elements of the patent as claimed"). Merely "provid[ing] numerous screenshots and citations to public documents explaining the components and operations" of the accused products does not do the requisite work of showing how they infringe. Opp. at 5.

At the hearing, the Court probed whether the shortcomings of the complaint might be cured by the soon to be filed infringement contentions. *See* Tr. at 3:6–11, 39:4–5. It appeared clear to the Court that Railware anticipated that its infringement contentions would be similar to the allegations in the complaint, and thus, in the Court's view, similarly deficient. *See id.* at 48:24–49:2. In sum, "due to the conclusory nature of the allegations which merely track the claim language," the Court concludes that the complaint fails to state a claim for direct infringement. *Estech Sys.*, 2025 WL 834494, at \*5. Accordingly, the Court GRANTS the motion as to Railware's claims for direct infringement with leave to amend. The Court finds that leave to amend is appropriate here because Railware has not yet had the opportunity to amend the complaint and it is not clear, at this early stage in the case, that amendment would be futile.

### B. Indirect Infringement and Willfulness

Caltrain argues that the complaint fails to allege facts from which indirect or willful infringement could plausibly be inferred. As to inducement, Caltrain argues that dismissal is appropriate because the complaint merely relies on "legal conclusions devoid of any specific facts" and does not allege specific intent to induce infringement. Mot. at 9–10. As to willfulness, Caltrain argues that dismissal is appropriate because the complaint fails to allege that Caltrain had pre-suit knowledge of the Asserted Claims or that Caltrain's conduct was egregious. *Id.* at 11. Railware responds that the complaint contains sufficient factual allegations that Caltrain acted with specific intent to induce infringement and had knowledge of the asserted patents. Opp. at 10–11.

United States District Court
Northern District of California

Because the Court agrees with Caltrain that the complaint fails to allege any plausible claim for direct infringement of the Asserted Claims, Railware's indirect and willful infringement claims also fail. *See, e.g.*, *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc.*, No. 23-cv-05792-RFL, 2024 WL 3422598, at *3 (N.D. Cal. July 16, 2024) (dismissing willful infringement claim where complaint failed to state a claim for direct infringement); *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016) (dismissing indirect infringement claim where complaint failed to state direct infringement claim). Because the Court will grant leave to amend, it briefly addresses the parties' arguments as to inducement and willfulness to provide guidance.

To begin with, the Court agrees with Railware that the complaint sufficiently pleads knowledge of the asserted patents to survive a motion to dismiss. While Caltrain's points about the threadbare nature of the complaint's assertions are well-taken, the complaint pleads that Railware "included the patent numbers of the Asserted Patents" in the "header bar of Railware's Dispatch X system" and "on Railware's freely and publicly available website," Compl. ¶ 51; that Railware filed similar suits asserting the same patents against other regional carriers, *id.* ¶¶ 56, 57; and that Railware sent Caltrain a letter informing it of its alleged infringement, *id.* ¶ 50. These allegations are sufficient to plead knowledge of the Asserted Patents.

That said, even if Railware had adequately alleged that Caltrain directly infringed the Asserted Claims, dismissal of its induced infringement claims would be appropriate. While Railware alleges that Caltrain induces its users and/or developers, the complaint does not identify who those users or developers are or how they infringe, even sometimes suggesting that the users or developers are "its own dispatchers." Compl. ¶ 121. *Cf. Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) (explaining that inducement requires pleading infringement by another). And the complaint's "'passing references to user manuals guides[] and support articles, without ever saying what those materials contain' . . . [are] 'wholly inadequate for an inference of specific intent.'" *Hypermedia Navigation LLC v. Google LLC*, No. 18-cv-06137-HSG, 2019 WL 1455336, at *2 (N.D. Cal. Apr. 2, 2019) (quoting *CAP Co. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015)).

11

Railware's willfulness allegations are similarly deficient. The complaint does not contain sufficient factual allegations to make it plausible that Caltrain engaged in "egregious" conduct that would warrant enhanced damages under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 110 (2016). The complaint simply makes the conclusory allegation that "Caltrain's continued infringement on or after any of these dates is in spite of the objectively high likelihood that its activities constitute infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Caltrain." Compl. ¶ 128. However, Railware makes no specific factual allegations about Caltrain's subjective intent, or any other aspects of Caltrain's behavior that would suggest its behavior was "egregious." Instead, Railware has simply made conclusory allegations of knowledge and infringement, which, considered in the totality of circumstances here, is not enough to plausibly allege "egregious[ness]." *Cf. Halo*, 579 U.S. at 111 (Breyer, J., concurring). Because Railware "has failed to make sufficient factual allegations that . . . [Caltrain's] behavior was 'egregious . . . beyond typical infringement,' it has failed to state a claim for willful infringement." *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017).

The Court agrees with Caltrain that dismissal is thus appropriate. Accordingly, the Court GRANTS the Motion to Dismiss as to Railware's claims for indirect infringement and willfulness with leave to amend.

### 2. Patentability of Claim 20 of the RE'155 Patent

Caltrain limits its subject matter eligibility challenge under § 101 to claim 20 of the RE'115 patent,[2] which it contends is directed to an unpatentable abstract idea even if the other Asserted Claims are not. *See* Mot. at 12. In response, Railware charges that Caltrain oversimplifies the "significant change in the distributed railway control system" claimed by

---

[2] Caltrain also challenges other claims of the RE'115 patent, including independent claims 30 and 31 and dependent claims 21 through 29 and 32 through 36. *See* Mot. at 13, 16–17. At the hearing, Caltrain explained that, although Railware only asserts RE'115 patent claim 20 in the complaint, Caltrain seeks an order invalidating these remaining claims as well. *See* Tr. at 35:15–20. The Court declines that invitation and limits its analysis to the claims before it. If Railware asserts additional claims of the RE'115 patent in a later pleading, Caltrain will of course be free to separately argue their patentability at that time.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

claim 20 and argues that the Court should adopt the reasoning of a prior district court decision declining to find several of Railware's patent claims subject-matter ineligible, including RE'115 patent claim 20.  Opp. at 18–19.  The Court agrees with Caltrain that, considering claim 20 in isolation, it is clear that the claim is directed to generating and transmitting a code, as implemented through generic computing components.[3]

Caltrain argues that claim 20 is directed to the unpatentable abstract idea of "generating and transmitting a secret code associated with a block placed on a track."  Mot. at 12–13.  Railware responds that this same argument was presented to and rejected by a district court in the Southern District of New York, which denied a motion to dismiss (brought by the same counsel representing Caltrain in this action) and declined to find any claims of the RE'115 patent subject-matter ineligible at *Alice* step one.  *See* Opp. at 12–13 (citing *see also Railware, Inc. v. Nat'l R.R. Passenger Corp.*, No. 22-cv-05013-KPF, 2023 WL 5432860, at *1 (S.D.N.Y. Aug. 23, 2023) ("*Amtrak*") ("[T]he Court cannot agree with Defendant's arguments at this stage of the litigation and on this record, and accordingly it denies Defendant's motion.")).  Caltrain seeks to distinguish *Amtrak* on the grounds that the court in that case declined to find claim 20 subject matter ineligible in the context of a § 101 challenge to claims of the '782, RE'835, and RE'115 patents and accordingly "did not confront the mere idea of simply generating and transmitting a secret code . . . without unblocking the track."  Mot. at 13–14; *see also* Reply at 13.

The Court begins its analysis of Caltrain's patentability challenge by considering the thorough and persuasive order of the *Amtrak* court, to which the Court accords "substantial weight" and "reasoned deference."  *Dolby Labs., Inc. v. Intertrust Techs. Corp.*, No. 19-cv-03371-EMC, 2021 WL 369542, at *5–6 (N.D. Cal. Feb. 3, 2021).  In *Amtrak*, the court looked more broadly at the claimed inventions in the asserted patents and rejected Amtrak's argument that Railware's patents—the same ones asserted here—were "ineligible for protection because they are

---

[3] At this stage of the proceedings, the Court has considered all claim terms in accordance with Railware's proposed construction where relevant.  *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1222 (Fed. Cir. 2025) (explaining that district courts "may adopt the construction advanced by the non-moving party and assess the motion [to dismiss] by applying that construction"); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

United States District Court
Northern District of California

directed to the abstract concept of 'generat[ing] and communicat[ing] data such as a code or identifier over a network for controlling items or devices'" because "despite the use of the abstract concept, the asserted claims nonetheless provide for an innovative method of achieving a specific result." *Amtrak*, 2023 WL 5432860, at *7–8 (alterations in original). Specifically, the court reasoned that the claims "do [not] simply describe a process for achieving an abstract end" but "[i]nstead . . . modify traditional centralized railroad systems by dividing control of the blocking and unblocking process between a central dispatcher and workers in the field, who previously played no role in railway control processes to solve the specific problem of central dispatchers erroneously removing blocks prematurely." *Id.* Stated differently, the *Amtrak* court concluded at *Alice* step one that the claims "provide[] a technological solution to the problem of trains entering tracks before railway workers have vacated them . . . through the addition[] of a personalized, interactive user interface." *Id.* at *10. The court in *Amtrak* did not consider claim 20 on its own merits.

Caltrain contends that—even if Railware and the *Amtrak* court are correct that the other patent claims are directed to a non-abstract "unconventional network architecture for . . . using a code that is associated with a block placed on a track by a dispatcher and that is transmitted to the railway field worker[] that is working on the track[] but otherwise . . . not readily available to the dispatcher," Compl. ¶ 34—claim 20 "never return[s] the code or require[s] this purported central feature" and thus fails to claim the "alleged . . . advance of unblocking the track with a code." Mot. at 13. The Court agrees.

Contrary to Railware's suggestions that "Caltrain's alleged abstract idea is nearly identical to the alleged abstract idea analyzed in *Amtrak*" and that "nothing" in the *Amtrak* court's analysis "says anything about unblocking a track," Opp. at 13, the core reasoning underlying that court's patentability determination at *Alice* step one was that the claimed invention embodied a specific, technological improvement in railway safety by dividing the role of unblocking track sections between the field worker and dispatcher, a feature that is simply not present in claim 20. *See Amtrak*, 2023 WL 5432860, at *8 ("[The claims" modify traditional centralized railroad control systems by dividing control of the blocking and unblocking process between a central dispatcher

and workers in the field, who previously played no role in railway control processes to solve the specific problem of central dispatchers erroneously removing blocks prematurely.").

Absent any requirement that the code be returned—or indeed, that anything *at all* be done with the code—the Court has no trouble in concluding that the invention to which claim 20 is directed is nothing more than the abstract idea of generating and transmitting a code in response to information about railway tracks. *See* RE'115 patent col. 15 ll. 10–22 (claim 20 describing a "railway control apparatus" configured to "receive . . . one track section," "transmit a block signal to the corresponding interlock associated with the . . . track section," "generate a secret code associated with . . . [the] track section," and "transmit the secret code to a remote user terminal"). The claim does not recite any technical improvement to the functioning of the networks or computing components themselves, instead teaching how to carry out a series of functional steps that could be carried out by humans. The specification reinforces the point, teaching that the claimed method is implemented using generic computing component including a "processor," "storage," "display," and "network." *Id.* at col. 5 ll. 18–31.

The Court is not persuaded by Railware's argument that the above constitutes an oversimplification of the claims. *See* Opp. at 20 (urging that the claim is directed to a "specific technological solution address[ing] the problem of errant, improper, and/or premature block removal"). On the contrary, Caltrain's characterization of the claimed invention tracks closely with the language of the claim language itself. *Compare* Mot. at 13, *with* RE'115 patent col. 15 ll. 20–22. The Federal Circuit has repeatedly instructed district courts that claims directed to nothing more than generating and transmitting information in response to stimuli without any asserted technological improvement are abstract. *See, e.g.*, *PersonalWeb*, 8 F.4th at 1316 ("use of an algorithm-generated content-based identifier to perform the claimed data-management functions, . . . include[ing] controlling access to data items . . . , retrieving and delivering copies of data items . . . , and marking copies of data items"); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 763 (Fed. Cir. 2019) (networked charging station that "allows the stations to be managed from a central location, allows drivers to locate charging stations in advance, and allows all users to interact intelligently with the electricity grid"); *Intell. Ventures I LLC v. Cap. One*

15

*Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("tracking financial transactions to determine whether they exceed a pre-set spending limit").

Railware fares no better at *Alice* step two, since the claims lack any inventive concept either individually or as an ordered combination because they merely recite well-known generic computing components and functions such as a "network," "processor," "user terminal," and "memory" without describing any unconventional arrangement or application. *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022); *see also Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 20-2320, 2021 WL 2944838, at *3–4 (Fed. Cir. July 14, 2021) (explaining that claims that "fail to set forth any particular physical configuration" fail to recite an inventive concept at step two). Nor does the Court find that the claim could plausibly be read to supply a technological solution to an existing problem without returning the block signal. Ultimately, because the claim language itself merely recites generating and transmitting a code associated with a block using generic components, the Court is unable to find an inventive concept suggesting patentability. *ChargePoint*, 920 F.3d at 774 (explaining that the abstract idea itself cannot supply an inventive concept).

Accordingly, the Court GRANTS the motion as to claim 20 of the RE'115 patent. In amending the complaint, Railware will be permitted to assert additional claims of the RE'115 patent, without prejudice to Caltrain renewing its patentability challenge. Although the Court declines to consider the patentability of unasserted claims, in the event that Railware later amends its complaint to include the dependent claims in the RE'115 patent, the *Amtrak* court's analysis would likely persuade the Court to consider those claims differently than claim 20.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The motion is GRANTED.

(2) The complaint is DISMISSED WITHOUT PREJUDICE. Claim 20 of the RE'115 patent is adjudicated to be unpatentable and may not be asserted as a basis for infringement.

(3) Railware SHALL file an amended complaint within thirty days of the date of this

United States District Court
Northern District of California

order. Amendment SHALL be limited to curing the defects identified in this order by particularly pointing out and accusing products or methods and adducing factual allegations showing that they practice each of the asserted claims, as well as pleading egregious conduct. No new patents or parties may be added without leave of court.

Dated: March 23, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

17